## WATSON *v.* CINCINNATI, INDIANAPOLIS, ST. LOUIS AND CHICAGO RAILWAY COMPANY.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE DISTRICT OF INDIANA.

No. 48. Argued October 31, 1889. — Decided November 18, 1889.

The improvement in grain-car doors, as claimed by Chauncey R. Watson and patented to him by letters patent No. 203,226, dated April 30, 1878, may have been new and useful, but did not involve the exercise of the inventive faculty, and embraced nothing that was patentable.

IN EQUITY. The court stated the case in its opinion as follows:

This was a bill filed by appellant against the Cincinnati, Indianapolis, St. Louis and Chicago Railway Company, in the Circuit Court of the United States for the District of Indiana, alleging an infringement of letters patent No. 203,226, granted to him for an improvement in grain-car doors, bearing date the 30th day of April, 1878.

The complainant averred, in his bill, that the patent was intended to secure and did secure to him " the sole and exclusive right to make, use and sell a car for the transportation of grain and other freight, constructed substantially like an ordinary freight car, having an outside door for closing the car, and provided with an inside flexible or yielding sliding grain door, which is adapted to be carried up on guide rods or their equivalent over head and out of the way and under the roof of the cars; that of such a car having an outside enclosing car door proper, in combination with an inside sliding flexible grain door, he was the first and original inventor," etc. These averments were denied in the answer, which also alleged that the thing pat ented in said patent, and every material or substantial part thereof, had been shown and described prior to Watson's supposed invention in various letters patent, fifteen in number, among them being a patent issued to Martin M. Crooker, May

26, 1868, and a patent issued to Horace L. Clark, August 29, 1871; and further averred that the grain-car doors, referred to in the bill as being on the cars of the Chicago, Rock Island and Pacific Railway Company, were made under the Crooker patent, which was afterwards assigned to Dennis F. Van Liew, and it was with his license and consent that the cars were so equipped with said doors; that "the only differences between said Crooker's doors and the complainant's are, that Crooker's slide in grooves and have their slats fastened together by a continuous wire running through them, while complainant's slide on rods passing through staples, and are fastened together by ordinary hinges, both being inside doors, and, with the exception of the above differences, operating in substantially the same way; that complainant's door, as described in his patent, contains no patentable invention in view of the Crooker patent, nor is it any improvement thereon, nor in view of the state of the art was there any patentable novelty or invention therein." The answer also denied any infringement of Watson's patent. Proofs having been taken, the bill was, upon hearing, dismissed, from which decree appeal was prosecuted to this court. The opinion by Woods, J., will be found reported in 23 Fed. Rep. 443.

*Mr. Charles P. Jacobs* for appellant.

*Mr. George Payson* for appellee.

Mr. Chief Justice Fuller, after stating the case, delivered the opinion of the court.

The proof of the use of grain-car doors by the defendant was contained in a stipulation, whereby it was agreed "that the defendant had hauled over its line of road, in said State of Indiana, freight cars belonging to the Chicago, Rock Island and Pacific Railway Company, having a solid outside door, like an ordinary freight car, and an inner flexible sliding grain door of less height than the opening in the side of the car, the grain door sliding in grooves like the grooves shown in the patent of Martin M. Crooker, of May 26, 1868, and the slats

composing the door being attached to each other by being strung upon wires passing through the slats."

Watson's application was dated February 18, 1878, and contained the following claims:

"1st. A grain door, constructed of longitudinal sectional pieces, hinged or strapped together in such manner as that the door as a whole may yield to follow any desired line of movement when it is not in use as a grain door, and it is desired to place it out of the way, substantially as herein described.

"2d. A grain door, D, constructed as above described, and hinged or strapped so as to be flexible or yielding, for the purpose set forth, in combination with the guiding rods C, whereby, when not in use, it may be carried up and placed in the horizontal portion of said guiding rods, so as to be out of the way, substantially as described.

"3d. A grain door, D, constructed as described, and provided with staples c c, in combination with guiding rods C, and devices for affixing it to the top of the car, substantially as described and for the purposes set forth."

The application was rejected. March 8, 1878, the examiners stating: "This 'grain door' differs from Crooker's (May 26, 1868, No. 78,188, carpentry doors), 'railroad car' only in the name and in this, that the upper portion of Crooker's door is cut off to make applicant's. The rods and staples are substitutes for Crooker's channel-irons — obvious to any skilled workman." Watson then, on the 18th of March, 1878, amended his specification by inserting:

"This invention relates to improvements in the class of grain doors for cars, and the invention consists in the combination, with a car, of an inside vertically sliding flexible or yielding door and guiding rods, whereby the door, when not in use, may be carried up and placed on the horizontal portion of said guiding rods, so as to be out of the way."

"I am aware that a car door of similar construction, sliding in grooved ways, is old, and such I do not desire to claim, broadly, as my invention. Said door, however, constitutes an outside or closing car door proper, and the car could not be

loaded or used for bulk grain unless the grain is put in from the roof of the car, as the door completely closes the doorway or opening. Furthermore, said door is obviously objectionable for other reasons, viz. : The grain will lodge or get in the grooved ways in which the door slides, binding or locking it so as to prevent its being raised, and also, being an outside door, the grain, pressing against it, would force or bulge the door outward, producing a similar effect as the grain lodging in the grooved ways; whereas my door, being an inside door and not reaching the top of the doorway or opening, admits an open space at the top for loading in the grain, with an ordinary outside door, to be locked or otherwise secured after the car is loaded. By also employing guiding rods for the door to slide upon, and, being an inside door, the defects incident to the grooved ways and an outside door before referred to are entirely obviated."

And at the same time he substituted for his first and second claims the following :

" 1st. The combination, with a car, of an inside flexible or yielding and vertically sliding grain door and guiding rods C, whereby said door, when not in use, can be carried up and placed on the horizontal portions of said guiding rods, out of the way, substantially as and for the purpose herein shown and described."

March 20, the application was again rejected, the examiners stating :

" It is not considered that Crooker in removing the upper few slats of his door would be making a patentable improvement on his own invention, albeit he might change its name and allege the result of loading in over the top of his door.

" The change is an obvious one to any user of freight cars; further, the use of rods and eyes is old in this connection. See patent of H. L. Clark, Aug. 29, 1871, No. 118,514 (carpentry doors), which further confirms the former action in relation thereto.

" In regard to the clogging and binding referred to in argument, no clear or considerable results are seen to be accomplished by applicant's device over the reference, such as should argue any invention thereon."

Watson then, on the 21st of March, 1878, further amended by substituting for the first and second claims the following:

"The combination, with a car, of an inside flexible or yielding sliding grain door, having staples *c*, and the vertical and horizontal bent guiding rods C, extending from the floor of the car upwardly and under the roof of the car, as herein shown and described, whereby said door, when not in use, can be carried up on the horizontal portions of said guiding rods, out of the way, substantially as specified."

The examiners again responded, March 23, 1878:

"The application does not present patentable novelty over Crooker, cited.

"In view of the state of the art as shown by the references cited, the *use of* eyes and rods for guiding the sliding door are the simple mechanical equivalents of the channel irons of Crooker. As claim does not differ in a matter of substance from the preceding, it is a second time rejected."

An appeal was prosecuted to the examiners-in-chief, who reversed the decision, saying:

"The invention in this case is small and the claim is correspondingly limited. It consists of a combination of various instrumentalities not found in either of the references.

"Applicant's car, as a whole, is adapted by convertibility to uses not compatible with the cases cited, without injury. In this case the flexible door is applied in addition to the usual slide doors, and when coarse freight is to be carried the flexible shutters are secured in place at the top under the roof of the car."

The door in use upon the freight cars which appellee hauled over its road, was a grain door sliding in grooves. The Watson door was carried on rods with staples. Even if there were no material difference between a door sliding in grooves and a door sliding on rods and staples, there was no infringement, for Watson had in effect disclaimed a door sliding in grooves by his amendments and the terms of his specification as they stood amended, and in the narrow claim of his patent the staples *c* and the guiding rods C were part of his combination, which he could not, under the circumstances, say were not es-

sential to it, nor that the grooves were an equivalent. *Gage* v. *Herring*, 107 U. S. 640; *Fay* v. *Cordesman*, 109 U. S. 408. But counsel for appellant insists that Watson's real invention "was not a question of rods or grooves, but was the combination in a freight car having an outside rigid door, of an inner flexible sliding grain door."

The Crooker door was patented May 26, 1868, and made of separate strips attached to each other by long continuous metal straps, so as to be flexible and capable of being slid up out of the way under the roof of the car, in grooves or channel irons affixed to the inside of the door-posts, but was a full and not a half door. One of the doors was an inside door, as appears from the drawings, and was described in his specification as follows: "B B and B' B' are metallic grooved ways applied at the margin of the door spaces *d d* and partially across the car, immediately under the roof of the same, the vertical portions of the ways B' B being on the inside of the car, just at the edge of the said spaces, and firmly bolted in place upon the car framing, or, if preferred, these vertical portions may be in the door space itself, as is the case with those of the ways B B." The Clark patent was issued August 29, 1871, for a rigid grain door filling only half the opening, and sliding on rods to the top of the car, where it was then swung up into a horizontal position, turning on eyes at the upper corners of the rods. The evidence established that inside grain doors, filling only part of the opening, had long been used on freight cars in connection with the outside door. Watson's door was made of separate slats, united to each other by hinges, and provided with staples at both ends that encircled the guiding rods on which the door might be slid up under the roof of the car so as to be out of the way. Making Crooker's door smaller so as to fill only half the opening, and using it in connection with an ordinary outside door, in combination with a car, is the invention claimed.

We agree with the learned judge holding the Circuit Court when he says: "There is nothing in either specification or claim concerning 'ordinary freight cars' nor solid sliding outside doors, and in the claim nothing about outside doors at all,

unless inferred from the description given of an inside door. If, however, such an inference is permissible, and the patent must or may be construed to consist in such a combination of inside and outside doors as is asserted, it cannot be upheld, because it does not involve invention, but consists in a mere aggregation of parts, each to perform its separate and independent function substantially in the same manner as before combination with the other and without contributing to a new and combined result. The outside door certainly remains unaffected in construction and in use; and the inner door is the same as the Crooker door, with a few slats left off or taken off by design or by accident; and whether done in one way or the other the change cannot reasonably be called invention, unless the distinction between mere mechanical skill and inventive genius is to be disregarded."

There was nothing new in flexible or rigid doors, outside and inside. There was nothing new in the use of outside and inside rigid doors in combination, the inside door filling only part of the opening. The substitution of the old flexible sliding inside door, reduced in size to correspond with the old inside rigid grain door, may have required some mechanical skill, and may have been new and useful, but it did not involve the exertion of the inventive faculty, and embraced nothing that was patentable. *Thompson* v. *Boisselier*, 114 U. S. 1, 11, 12, and cases there cited; *Stephenson* v. *Brooklyn Crosstown Railroad Company*, 114 U. S. 149.

The decree was right, and it is

*Affirmed.*