HICKORY WHEEL CO. v. FRAZIER et al.

(Circuit Court of Appeals, Seventh Circuit. March 2, 1900.)

No. 568.

PATENTS—INVENTION—IMPROVEMENT IN SULKIES.

The Elliott patent. No. 494,113, for improvements in sulkies, the essential feature of which is the use on sulkies of wheels less in diameter than the distance between the shafts and the ground, and provided with pneumatic tires,—in effect, the substitution of bicycle wheels for the higher wheels formerly used,—is void for want of patentable novelty. While the results attained were effective, the devices themselves, which alone could be the subject of a patent, were old and well known, and their application to the use of the patent did not involve invention.

Appeal from the Circuit Court of the United States for the Northern Division of the Northern District of Illinois.

For former opinion see 89 Fed. 202.

William A. Redding and C. R. Offield, for appellant.

L. L. Bond, for appellees.

Before WOODS, Circuit Judge, and BUNN and ALLEN, District Judges.

BUNN, District Judge. This is a bill in equity brought to restrain infringement of letters patent No. 494,113, dated March 21, 1893, and No. 498,709, dated May 30, 1893, both issued to Sterling Elliott, and

relating to improvements in sulkies. The validity of both these patents was in issue before the court below, and each held invalid by that court for want of patentable novelty, and the bill dismissed. In this court the appellants waive all claim of error as to the last-named patent. So that patent No. 494,113 is the only one involved in this appeal. There are two claims made in this patent:

"(1) The combination in a trotting sulky of a frame, shafts or pole, and seat, and wheels less in diameter than the distance between the shafts and the ground, and provided with elastic tires, substantially as described.

"(2) The combination with the frame, shafts, and seat of a sulky, of wheels less in diameter than the distance between the shafts and the ground, and provided with pneumatic tires, substantially as and for the purpose set forth."

It will be noticed that these claims are the same, except that one calls for elastic tires and one for pneumatic tires; but as the specifications say that the wheels are only preferably provided with ordinary pneumatic tires, and all the testimony goes to show that pneumatic tires are greatly to be preferred, and are the only ones used upon the appellant's sulky, the second claim is the only one that needs to be considered. The claim is confessedly for a combination of elements which were all old in the art at the time the patent was issued. The shafts and seat were old, the wheels were old, and the pneumatic tires were all old. If there be any invention, it consists in putting pneumatic tires upon the wheels of a sulky which shall be less in diameter than the distance between the shafts and the ground; and we concur fully with the finding of the court below that, in view of the prior art, the proposed combination presents no patentable novelty. It is a bald aggregation of parts old in the art, each part operating in the old and usual way, without any semblance of invention in the mechanical means by which a new or useful result is brought about; and, even if the combination were otherwise patentable, the previous state of the art shows it was not new to this patent. Pneumatic tires had been used and fully developed before in connection with bicycles as early as 1891. Solid rubber and cushion tires had been used long before, and were familiar to the public. These and the pneumatic tire, which now takes their place, had also been used, upon small wheels of all sizes, such as are called for by this patent, if it can be said that size is or can be any element in a patent of so much uncertainty of description. If anybody can tell from the patent what the limits either up or down are for the size of the wheel to be covered by the patent, they can do what counsel have not attempted to accomplish. There seems indeed a most picturesque uncertainty about the size of this wheel. The only limit is that it shall be less in diameter, or not exceed in diameter, as is sometimes stated, the distance of the shafts from the ground. Where this measurement is to be made is not stated. We infer from the patentee's testimony that the measurement is to be made at the wheel or where the shafts are attached to the sulky, as, in answer to the question as to how high the shafts are usually from the ground, he says his impression is that 36 or 37 inches directly over the wheel is the height. The experts for appellant, however, seem to think the measurement should be made where the shafts are attached to the horse, which

seems just as reasonable. But in that case there is the great uncertainty arising from the difference in the place where the attachment is made to the harness, whether high or low, or lower. So that there is no evidence to show, and no improbability in the supposition, that the patent might not cover almost all sizes of wheels, from 4 inches to 4 feet 6 inches, or 4 feet 8 inches, in diameter, which seems to be the size of the wheel used with old sulkies before pneumatic tires were used. If this be so, the Elliott patent, if valid, would interdict the use of wheels with cushioned and pneumatic tires, in common use upon sulkies at and previous to the time of the issuing of the patent, if they happened to be less in diameter than the distance of the shafts from the ground.

This surprising uncertainty regarding the size of the wheel is itself a heavy drag upon the Elliott patent, and was so considered by the patent examiners and appeal board at Washington, who held, as the court below held, the patent invalid for want of invention. It will be observed that there is no vital relation between the specification that the wheel must be less in diameter than the height of the shafts above the ground and the result to be obtained, which is the speed of the horse; and in practice all the patentee did was to take a pneumatic rubber tire then in common use upon bicycles of the standard height of 28 inches, and put it upon a wheel of that size on his sulky, and that, without any regard to the height of the horse, whether 15 or 18 hands high, except that for colts and Shetland ponies a smaller wheel was used, and without regard to the height of the shafts from the ground. And this is just what the improvement consisted in; and there is no question, from the evidence, about its being an improvement over the old-style high-wheel sulky with metal tires. It was no doubt a happy thought on the part of Elliott, though, as we shall see, not new with him, and the 28-inch wheel and pneumatic tires, in combination with ball-bearing axles and better training, improved the speed of fast horses from five to six seconds in the mile. How much was due to each of these causes cannot be told from the evidence, and need not be, for there is nothing depending upon it. The general result to be arrived at from appellant's experts is that a large part of this improvement, perhaps one-half, comes from the use of the ball-bearing axle, which has no part in the appellant's combination. The evidence shows that the reducing of the size of the wheel from 4½ feet to 28 inches improved the sulky, first by decreasing the weight, and second by increasing its strength and lessening the vibration in going around corners. So that, as Mr. Robert Bonner in his testimony says:

"There is much less slewing of the sulky, and the horse can travel around turns with this sulky almost as fast as he could with the saddle, and much faster than with the old-style high-wheel sulky."

He says, also, that the shape of the track is of not so much importance, because the new style of sulky goes around the turns so much easier. Another advantage, as shown by the record, of the pneumatic tire, is that the sulky or vehicle is more easily drawn, because its impressible character assists in overcoming the resistance

of obstacles in the track. Still another is that the reduction in the slewing of the sulky lessens the draft, and makes it easier to draw. The slewing tends to increase the draft, and also to break the gait of the horse. The effect of the ball-bearing device is stated very succinctly by appellant's expert John Malcolm Forbes as follows:

"The ball bearing reduces the friction, and enables the manufacturer to use a small wheel, and the small wheel with or without the pneumatic tire does not slew as much as a large wheel with or without a pneumatic tire."

Frank S. Gorton, another witness for appellant, says:

"The ball bearings have a great deal to do with reducing the friction, and consequently lessening the draft," and also that the general opinion among trotting-horse people is that the reduction in weight, the pneumatic tire, and the ball-bearing axle, with small wheels combined, have been responsible for the reduction of records.

Samuel McMillan, another witness for appellant, testifies as follows:

"Q. The pneumatic tire makes the sulky run much easier, does it not? A. Yes, sir. Q. And it makes it much easier to pull, does it not? A. That is a question upon which men differ. Some think the benefit of the light draft is due to the pneumatic tire, and others that it is due to the ball-bearing axle."

Now, whether the lighter draft and the consequent increase in speed is owing to the small wheel and pneumatic tire, or to the ball-bearing axles, or to all of these combined, we are of opinion, inasmuch as Elliott invented none of these things, and they were all old in the art at the time he took his patent, that he is in no way entitled to the benefit and advantage of the improvement. Somebody did invent the ball bearings, and somebody did invent the pneumatic tire, and the small wheel has existed from time immemorial, and the people who made these improvements are entitled to the advantage of the inventions. It seems quite evident that putting a pneumatic tire made for bicycles upon the wheels of a two-wheeled sulky requires no invention or even mechanical skill. The evidence shows that pneumatic tires had already been used upon sulkies with the size of wheel then most in common use. That being so, it was not invention to put one on a smaller wheel. The question of size is mostly one of degree. Watson v. Railway Co., 132 U. S. 161, 10 Sup. Ct. 45, 33 L. Ed. 295; French v. Carter, 137 U. S. 239, 11 Sup. Ct. 90, 34 L. Ed. 664; Road-Mach. Co. v. Pennock & Sharp Co., 164 U. S. 26, 17 Sup. Ct. 1, 41 L. Ed. 337; Tooth-Crown Co. v. Gaylord, 140 U. S. 55, 11 Sup. Ct. 716, 35 L. Ed. 347; Adams v. Stamping Co., 141 U. S. 539, 12 Sup. Ct. 66, 35 L. Ed. 849. Nor was it any more invention to make a combination of these things, already in common use, with the seat, shafts, or pole and frame of a sulky, also in common use, without any new mechanical device or improvement to give a new and beneficial result, but each part of the combination performing the same function it had always performed; for it must be remembered that the mere end and purpose sought to be accomplished by a device is not the subject of a patent, but only the new and useful means for obtaining that end. Knapp v. Morss, 150 U. S. 221, 14 Sup. Ct. 81, 37 L. Ed. 1059; Wollensak v. Sargent, 151 U. S. 227, 14 Sup. Ct. 291, 38 L. Ed. 137. As was said by the court below in its opinion:

"The advantage of employing pneumatic tires on vehicles other than bicycles must have been obvious, and was, in fact, pointed out. This was done by Thomas Dunne, in patent dated June 28, 1892, and by Robert William Thompson at early as 1845. The Dunlop patent of 1891, under which the well-known Dunlop bicycle tire has been so largely manufactured, expressly stated that his hollow, air-inflated, India-rubber tire could be well used on the wheels of bicycles and other vehicles. The so-called invention of the patent under consideration confessedly resides in applying to this old form of little wheels this prior well-known elastic tire. It consists simply of putting upon a sulky the wheels of a bicycle. It has not the merit, however small, of being the first suggestion of such a possibility, as the foregoing references to the earlier patents prove. The result is effective, but cannot, in my judgment, be monopolized; for, in view of the prior art, it presents no patentable invention."

In the patent issued to J. B. Dunlop in March, 1891, which was a reissue of an original patent issued September 9, 1890, the patentee says:

"My invention has for its object to provide a hollow or tubular India-rubber tire for the wheels of cycles or other vehicles, which is inflated with air or gas under pressure, and surrounded with cloth, canvas, or other suitable material to adapt it to withstand the internal pressure of the within-contained air or gas, and to allow of its being maintained securely in position on the rim of the cycle or vehicle wheel."

And further on in his specifications the patentee describes the benefits of his improvement much as the witnesses in this case describe the appellant's supposed improvement. He says:

"From the foregoing description it will be observed that a hollow, air-inflated India-rubber tire constructed according to my invention possesses several important advantages over the solid India-rubber tires at present in use, inasmuch as, while being equal in strength to those ordinarily made, it is more elastic; all vibration and shock when riding or driving over rough roads being intercepted between the rim of the wheel and the ground. Consequently little or no jar is experienced by the rider or riders of the cycle or occupants of the vehicle to which my improvements are applied."

In this patent there was a distinct application of the pneumatic tire to the wheels of driving vehicles, without regard to the size of the wheels, whether large or small, and leaves little or no room for invention in such an adaptation. Mr. Elliott himself says that the pneumatic tire is not a new thing as applied to vehicles; that it was made 40 years before there was such a thing as a bicycle; that it was applied to a carriage by a man named Thompson, of England; and that it was not until 45 years later that it was applied to bicycles. That Elliott was not the first to suggest the application of pneumatic tires to fast-running vehicles is apparent upon an inspection of patent No. 477,996, issued to T. Dunn, in June, 1892. In the patentee's specifications he says:

"Pneumatic tires, constructed as described, may, in consequence of their narrow running surface, great resiliency, and ease of running, be advantageously used for machines intended exclusively for use on racing paths; also, owing to the practicability of making them of the requisite strength and durability, they may be employed with advantage on the wheels of fast-running vehicles other than cycles."

It would appear quite clear from this patent that Elliott has not the merit of making the discovery that pneumatic tires might be made useful for speeding or racing purposes. Other patents in the record also show clearly that neither the idea nor the combination

was new to Elliott, particularly the Thomas patent, No. 399,362, the Leggett patent, No. 422,349, the Brown patent, No. 485,605, and the Whipple patent, No. 319,871, issued in 1885. These patents leave very little room for invention in the adaptation of pneumatic tires to the wheels of carriages, whether large or small.

We find no error in the record, and the decree of the court below is affirmed.