## BROWN–BROCKMEYER CO. v. MASTER ELECTRIC CO.

## MASTER ELECTRIC CO. v. BROWN–BROCKMEYER CO.

### Nos. 6361, 6577.

Circuit Court of Appeals, Sixth Circuit.
April 15, 1935.

H. A. Toulmin, Jr., of Dayton, Ohio (H. A. Toulmin, of Dayton, Ohio, on the brief), for appellant.

Marston Allen, of Cincinnati, Ohio (Paul A. Staley, of Springfield, Ohio, on the brief), for appellee.

Before MOORMAN, HICKS, and SIMONS, Circuit Judges.

HICKS, Circuit Judge.

These causes were heard together and will be disposed of in one opinion.

*No. 6361.* Suit by appellant, the Brown-Brockmeyer Company, against appellee, the Master Electric Company, for infringement of claims 1, 2, 3, 7, 8, and 13 of patent No. 1,018,833, issued February 27, 1912, to John C. Lincoln for a "convertible motor," and assigned to appellant. The principal defenses were invalidity and noninfringement. The District Court decreed that the claims were not infringed.

Paragraph 2 of the specifications defines the field and subject of the patent as follows: "This invention relates to motors, and more especially to single-phase motors wherein the principles of repulsion start and induction operation are utilized for the purpose, on the one hand, of obtaining a very powerful starting torque and, on the other hand, after attaining full load speed, of maintaining such speed constant under varying conditions of load. It has been proposed to provide motors of this type with centrifugal governing devices whereby, when the motor has been brought up to the desired speed, by operating on the so-called repulsion principle, it may be automatically transformed to a motor of the so-called induction type."

The governing device consists of a plurality of disks of conducting material having a circular hole punched through their centers through which is passed an endless helical or garter spring which holds the disks securely and causes them to seat necklacelike into an annular recess in a metal collar which is movably mounted upon the rotor or central shaft of the motor. This collar is under pressure from a spring positioned in the bore of the shaft, and, when the motor is at rest or moving at starting speed, it presses upon the disks, holding them against the head as well as in their position in the recess. The head is separated from the commutator bars by insulation and an air gap.

At the starting speed, the motor takes current from the commutator bars. As it nears top speed, the conducting disks are actuated by centrifugal force and move out of their annular seat against the tension of the helical spring, and against the pressure of the collar, making contact with the commutator, short-circuiting it, and causing the motor then to operate on the induction principle.

A cross-section of the space in which the conducting disks move is roughly wedge-shaped with the larger portion nearest the shaft. The head, insulation, and a project-

ing corner of the commutator bars form one side of this wedge-shaped space, and the collar, the other. The head and insulation extend uniformly at right angles to the shaft, except for the slight projection on the commutator bars at the narrow end of the "wedge." The inner face of the collar, on the other hand, is irregular, having the deep annular recess at the inner or broad end of the "wedge," and an outer seat opposite the commutator bars, at the narrow. The recess and outer seat are demarked from each other by the angle made at the point of merger between their two sides in the inner face of the collar. In their position in the annular recess, the individual disks are in contact with both sides of the "wedge," the head and the collar, respectively. As the disks move outwardly under the influence of centrifugal force into the narrow part of the "wedge," they force the collar back, against the pressure of the spring in the shaft, moving into the outer seat, and touching the collar on one side, and making contact with the commutator bars on the other. When the speed of the motor declines to a certain point, the tension of the helical spring and the pressure from the collar exceed the centrifugal force, and the disks move past the angle, and snap back into the annular recess. Both the garter spring and spring-pressed collar exert their force always in opposition to the centrifugal influence and never in conjunction with it.

In defendant's device, the collar does not move. The flat-conducting slugs, actuated by centrifugal force, are shaped like dumbbells, being roughly two circular disks joined by a short connection of the same metal. One "ball" of the dumbbell always fits into a deep annular recess in the collar, whether the motor is starting or moving at highest speed. In the starting position, one side of the narrow connecting band or "waist" of the dumbbell fits over an annular rib projecting at right angles from a ring or collar which encircles the shaft, with its long axis parallel to the shaft and its other "ball," which is the one that changes position, near the head but not touching it. The head is insulated, as in Lincoln, from the commutator bars, the ends of which project upward at an obtuse angle to the plane of the head. In starting position the dumbbell is held in place by a helical spring which fits into the other side of the "waist." At high speeds, the free end or "ball" of the dumbbell swings outwardly under the influence of centrifugal force, and against the tension of the helical spring, until it comes in contact with the commutator bars. The other end or "ball" of the dumbbell slips in the annular recess of the retainer, but its center remains at the same point, irrespective of the position of the outer "ball."

A review of the file wrapper history of the Lincoln patent shows that at various times patents to Bliss, No. 745,722, Blair, No. 742,280, Bretch, No. 772,083, Schnur, Nos. 922, 521, Thomson-Houston Company, No. 337,036 (French), Pillsbury, No. 620,-609, and to Bell, No. 935,352, were cited against its original broad claims. Their very number as well as their drawings and specifications indicate that Lincoln came into an old and crowded art. Bliss showed centrifugally actuated balls moving into a wedge-shaped space and bringing pressure on a sliding collar to make the necessary short-circuiting contact; in Blair wedge-shaped weights took the place of the balls in the patent to Bliss, but operated in the same manner; in Bretch slugs, mounted around a rib somewhat as in defendant's device, pivoted outward under centrifugal force against a spring-actuated collar; the centrifugal device in Schnur was the same as in Blair, with the addition of a flexible metallic strip upon which the contacting laminæ or slugs were strung, as a retaining means; the French patent depicted the use of a helical spring in its short-circuiting device; in Pillsbury, centrifugally actuated weights at the ends of jointed arms forced a collar under the pressure of a coil spring into a position where contact was made; and in Bell a spring coiled around the shaft operated against the shoulders of segments which pivoted outward at one corner into contact with the commutator.

In view of these patents with their manifold elements and combinations, each designed to achieve a short circuit with the commutator at high speed, we think that Lincoln's range of invention was very limited, and the utmost that may be said is that the claims in issue should be narrowly construed. Continental Paper Bag Co. v. Eastern Paper Bag Co., 210 U. S. 405, 413, 28 S. Ct. 748, 52 L. Ed. 1122; Directoplate Corporation v. Donaldson Lithographing Co., 51 F.(2d) 199, 202 (C. C. A. 6). Applying this principle, we are of the opinion that appellee's device does not infringe.

Claims 1, 2, and 3 are alike, in that they call for a motor, a rotor shaft, a commuta-

tor, and a retainer with an annular recess and an outside space or seat. Claim 1 in addition calls for a centrifugal device to seat both in the recess and the outer space and to make contact with the commutator; claim 2 for a flexible connecting ring, actuated by centrifugal force, to seat both places and to make contact with the motor; and claim 3 adds a centrifugal conductor seating both places and making contact with the commutator.

These claims are not infringed, since the conductors in defendant's device seat in but one place in the collar and not in two different seats or places (the annular recess and outer seat), as is specified in the claims.

Claims 7, 8, and 13 call for a motor, a rotor, and a commutator. Claim 7, in addition, calls for a device co-operating with the commutator, moving radially outward by centrifugal action to short-circuit the commutator, the device to be composed of a plurality of conducting disks with a retainer "having a surface on which said disks may roll outwardly."

In Claim 8, the short-circuiting device moved radially outwardly and was composed of perforated disks surrounding the shaft and a spiral spring extending through the disks flexibly connecting them, and a retainer "having a surface on which said disks may roll outwardly."

It seems clear that defendant's laminæ pivot or tilt outward much after the manner of those in Bell, but do not roll. The center of the seated "ball" of the dumbbell does not change position, except for what play it may have in its seat. There is no movement "along a surface *without slipping* by perpetually turning over the foremost point of contact as an instantaneous axis." (Italics added.) See Century Dictionary (1913 Ed.) under definition of the word "Roll." Nor, as is said in Webster's New International Dictionary (2d Ed.) 1935, under definition of the same word, is one line or surface applied "to another continuously *without slipping.*" (Italics added.) See, also, A New English Dictionary, 1914, Sir James Murray, wherein the intransitive definition of "Roll" is given, "to move forward on a surface by turning over and over." Since the pivoting "ball" of defendant remains in the recess or socket, there is a friction or slipping of one surface against the other, and not the application of surfaces in "successive contact." See Webster, supra. Nor

are the dumbbell-shaped laminæ by any stretch of the imagination disk-shaped.

Claim 13 calls for a short-circuiting device moving by centrifugal force interposed between the commutator and collar, with means carried by the collar to limit the outward movement of the device, and means to limit the movement of the collar away from the commutator. Appellee escapes the calls of this claim because its device does not utilize a moving collar.

*No. 6577.* Suit by appellant, the Master Electric Company, against appellee, the Brown-Brockmeyer Company, for infringement of claims 6 and 10, and 16 to 21, inclusive, of patent No. 1,568,675, issued January 5, 1926, to E. P. Larsh for a "short-circuiter for electric motors"; and for infringement of claims 16 to 20, inclusive, and 24 of patent No. 1,678,517 issued July 24, 1928, to Larsh for a "short-circuiting device for motor commutators." Both patents were assigned to appellant. The District Court held that the claims were not infringed.

*First, as to Patent No. 1,568,675.* It deals with a combination of the familiar motor, rotor, commutator, and a plurality of conducting slugs arranged radially around the armature shaft. As in the devices in case No. 6361, the slugs are actuated by centrifugal force moving from their "in" position outwardly against the influence of a garter spring into contact with the commutator bars, short-circuiting them. The helical spring, instead of passing through a hole in the slugs as in Lincoln (patent No. 1,018,833), is seated in an open notch in their "outer faces."

In its findings of fact the District Court said: "The alleged novelty of the short-circuiter embodied therein lies in the *open notch formed in the lateral margins of the contact segments,* such features characterizing all the claims in issue." (Italics added.)

Counsel for appellant in their brief acquiesced in this finding saying: "It may be taken * * * that we are in substantial accord with the court on this finding of fact above quoted."

But the "open" notch element was old. This identical feature appeared in Bell patent, No. 935,352—1909,—as one modification of its short-circuiting device. In Bell the segments were not so numerous as in Larsh, but they were ranged radially around the armature shaft and were held in place by a

ring of spring wire which fitted into an open groove in their peripheries. The fact that all the elements of combination claims are old does not of itself invalidate the patent, but, assuming that it was valid, we do not think that it was infringed. There is a lack of identity in operation. The Larsh specification describes the contact members or conducting slugs as having under centrifugal influence at least two movements; (1) A limited degree of oscillatory or tipping movement into butt contact with the ends of the commutator bars; and (2) "upon further acceleration of speed * * *" and "expanding or radial movement in which they wipe the contact ends of the commutator bars to insure clean, bright, electrical conducting contact surfaces." The specification further declares that the device has "no pivotal joints or indirect movements. * * *"

The "expanding or radial movement" is further described as a movement "outwardly with sliding or wiping contact upon the ends of the commutator bars. * * *" It is further said that "the outer ends of the contact members 10 engage and ride upon the inclined peripheral flange 7 of the disk or housing 6." In appellee's device the contact members have no radial sliding movement or wiping contact upon the ends of the commutator bars and do not ride upon the surface of the housing disk. In appellee's device the contact is made by a pivotal swinging movement in the arc of a circle. See Cimiotti Unhairing Co. v. American Fur Refining Co., 198 U. S. 399, 414, 25 S. Ct. 697, 49 L. Ed. 1100; Kellogg Switchboard & Supply Co. v. Dean Electric Co., 182 F. 991, 1003 (C. C. A. 6).

■ *Second, as to Patent No. 1,678,517.* After appellant brought suit upon this patent, reissue No. 18,093, June 9, 1931, was substituted, and claims 15 to 19, inclusive, and 23 thereof, are identical with the issue claims in the original patent. The reissue combined a motor, rotor shaft, commutator, and a retainer slidably mounted on the shaft under the pressure of a barrel spring. It has a ring of slugs radially arranged around the armature shaft between the retainer and the head. "The slugs * * * have each a slotted opening * * * therein through which extends an elastic retainer shown in Fig. 3 as two close coils of a helical spring. * * *" The slugs fitted snugly around the armature shaft at rest and at starting speed, but slide radially outward under the influence of centrifugal force to come in contact with the commutator bars.

This patent is much like No. 1,018,833 to Lincoln, closest in the art. In Lincoln, the slugs are circular disks; here their shape is roughly trapezoidal, with a flat bulge next to the head, on its outer half. This bulge is rounded at its corners to achieve a "wiping" or cleaning action on the commutator bars as it slides across them into a short-circuiting position and presumably to facilitate its passage over a rib or "hump" on the insulating head.

Claim 14 of Lincoln calls for a "hump" on the slidable collar over which the contact members must pass to effect the short-circuiting. This hump is in fact the point of the angle formed by the converging sides of the two seats in the collar. It is mounted by the disks only in leaving the *inner* recess or seat. The inner surface of the collar in Lincoln has a steep slope at the bottom, and a lesser one near the top. On the inward movement, i. e., from the top, the disks do not have to mount any slope or "hump" in reaching the bottom, though they might cross an angle formed by the different degrees. All of the inward movement is downhill. There is no point where the disks have to climb, against the force of gravity, in moving inward. The pressure of the collar is always in aid of, and not in opposition to, the inward movement. The collar spring in Lincoln never acts against the inward motion, and such is not claimed nor described. Claims 13, 14, 15, and 16 of Lincoln speak of restraint, but only of the outward movement.

In Larsh (reissue No. 18,093) the rib is actually "climbed," and hence initially retards the slugs on their inward movement as well. The location of this rib or "hump" so that there is a retardation of the inward movement of the slugs by forcing them upward against the pressure of the collar is a new feature in the art, and the claims in suit are worded to preserve it. Though a new feature, it is not necessarily invention. Retardation of the outward movement was described and claimed in Lincoln. Retardation of the inward motion was suggested, if not embodied. Lincoln need only to have provided a hump in the way of the inward movement to have restrained it also. The depth of the recess measures the height of the hump. To produce a hump one needs only to deepen the recess. With the example before him of deepening the

inner recess to retard the outward movement, an ordinary craftsman could have retarded the inner movement by the obvious expedient of deepening the outer recess. This would not be invention, nor would it be invention to transfer the hump from the collar to the insulating head as did Larsh. Such would not have been "the product of a creative mental conception, but merely the result of the exercise 'of the ordinary faculties of reasoning upon the materials supplied by a special knowledge, and the facility of manipulation which results from its habitual and intelligent practice.' " American Road-Mach. Co. v. Pennock & Sharp Co., 164 U. S. 26, 41, 17 S. Ct. 1, 7, 41 L. Ed. 337; Newcomb, David Co., Inc., v. R. C. Mahon Co., 59 F.(2d) 899, 901 (C. C. A. 6).

Holding the claims in issue invalid, we need not consider the question of infringement.

The decree in each case is affirmed.