### GLEITSMAN et al. v. MONARCH SANITARY PRODUCTS, Inc.

### SAME v. NEW YORK STANDARD MFG. CO., Inc.

### Nos. 8567, 8568.

District Court, E. D. New York.
Jan. 23, 1939.

Brown & Jones, of New York City, (Donald L. Brown, of New York City, of counsel), for plaintiffs.

David M. Liptzin, of New York City, for defendant New York Standard Mfg. Co. Inc.

Alexander Mencher, of New York City, for defendant Monarch Sanitary Products, Inc.

CAMPBELL, District Judge.

On stipulation the two cases were tried together, the testimony offered in each case, in so far as it is applicable to be received in the other.

These are suits for the alleged infringement of two United States Letters Patent.

1. Patent No. 2,120,661 issued to Harold Gleitsman for clothes hamper granted June 14th, 1938 on an application filed December 8th, 1936.

This invention relates to new and improved clothes hampers and the like.

2. Design Patent No. 110,355 issued to Harold Gleitsman for design for a hamper granted July 5th, 1938 on an application filed February 4th, 1938.

This patent is for an ornamental design for a hamper, as shown and described.

Both patents are owned by the plaintiff, Harold Gleitsman, and are exclusively licensed to the plaintiff, Gleitsman's, Inc.

The inventions of the patents have been conjointly used by the plaintiff corporation since the Summer of 1937.

The notice required was given to the defendants, and these actions were started shortly after the issuance of the Design Letters Patent.

The defendants have interposed answers alleging the defenses of invalidity and non-infringement.

The plaintiff, Gleitsman's Inc., has been engaged in the business of manufacturing clothes hampers for the past eight years.

Samples of the plaintiff's commercial product were offered in evidence as Exhibits 9, 10 and 11 and plaintiffs contend that these hampers embody the invention of the patent in suit.

Plaintiff's sales largely increased when the aforesaid hampers were placed on the market, and plaintiffs enjoyed considerable commercial success.

The new hampers were first disclosed to the trade by plaintiffs, in the Summer or early Fall of 1937. Some time thereafter, the defendant, Monarch Sanitary Products, Inc., introduced its alleged infringing structure, which is Exhibit 12, and the defendant, New York Standard Manufacturing Co., Inc., introduced its alleged infringing structure, which is Exhibit 13.

The alleged infringing structures of the two defendants are substantially identical, but there are some differences, which will be pointed out in the analysis of the question of infringement.

For all practical purposes the issues raised in each case are identical. Reliance upon the same prior art is had in both cases, and the same alleged differences between the alleged infringing structures and the patents are present, and the arguments made as to non-infringement are the same.

There is, however, a difference which may be said to be important, in that the defendant New York Standard Manufacturing Co., Inc., admits that it was familiar with the products of the plaintiffs, when it first marketed its own structure, while the defendant, Monarch Sanitary Products, Inc., makes no such admission.

The objects of the invention of the structural patent No. 2,120,661 are stated by the patentee in the specification of that patent to be as follows:

"An object of the invention is to provide a clothes hamper which may be readily and cheaply manufactured, which is durable, and which comprises novel structural features of pleasing appearance.

"A further object of the invention is to provide a clothes hamper and more specifically a clothes hamper the side walls of which are made of woven or mesh fiber or the like wherein the front panel of the hamper may comprise a body structure of different appearance set off from the body material used throughout the remainder of the hamper by a pair of ornamental structural supporting elements.

"A still further object of the invention is to provide a clothes hamper of the character described wherein a plurality, as for example the two front upright elements which support the top frame and cover of the hamper, function also as ornamental covering members for joints or seams in the outer body covering the hamper.

"A still further object of the invention is to provide a hamper of the character described wherein all joints or seams in the material forming the side walls of the hamper are covered by ornamental structural elements.

"Other objects of the invention will in part be obvious and will in part appear hereinafter."

There is described in the specification, the usual prior art hamper, in which the side walls comprise mesh fiber which was tacked at its exposed edges to a rear, upright supporting element, the exposed seam being then covered by carrying down a strip of braid from the upper edge of the hamper. It is stated that such a structure provides a rough and uneven rear surface, and a uniform body appearance, except for the single rear seam. In the specification it is pointed out that the rear wall of the hamper should preferably be smooth and that any ornamental features should appear on the front panel. In the specification, it is also pointed out, that with the structure of the patent in suit a highly decorative panel of more expensive material may be used in the front of the hamper, and that this may be set off from the remaining wall closure element by decorative molding.

The embodiment of the invention specifically described, comprises a hamper having a top frame 11, provided with handles 12 and a cover 13. The main object of the hamper is said to comprise a front panel element and a wall closure element 15, which extends completely around the body of the hamper from one edge of the front panel, element 14, to the other edge thereof. The front of the hamper is described as comprising adjacent its rear wall, the usual upright supporting element 16. The supporting elements adjacent the front wall are described as comprising grooved strips 20, which are provided with outwardly extending ornamental sections 22 which act as covers for the edges of the wall closure

elements. The wall closure elements are nailed to the back portions 24 of the elements 20. The back portions 24 are described as comprising the structural supporting elements for the upper frame 11 and for the wall closure elements 14 and 15. The ornamental covering panels 22 are affixed to the back supporting elements 24 in such a way as to provide grooves in which the edges of the wall closure elements are seated.

The Design Patent in suit No. D 110,-355 discloses a preferred form of the panel type hamper covered in the structural patent. In the Design Patent there are present in the front wall a panel element defined by relatively wide strips of molding, the curved corners of the hamper body and the somewhat squat and rounded handles. The legs and handles of the hamper are shaped to conform to the generally rounded edges, and are designed to provide a flowing line, so that the entire structure gives an appearance of rounded corners with a complete absence of sharp and protruding edges.

A discussion in detail of the elements of the Design Patent would be of little value as it is the appearance of the design as a whole, which furnishes the test of validity and infringement.

Plaintiff bases its complaint on Claims 1 and 2 of the structural patent No. 2,-120,661 which read as follows:

"Claim 1. A clothes hamper comprising, in combination, a bottom element, a plurality of vertical supporting elements affixed thereto, a top element supported by said vertical elements, a plurality of wall closure elements, one of said wall closure elements forming the rear wall and the side walls of said hamper, the other of said wall closure elements forming a portion at least of the front wall of said hamper, a plurality at least of said vertical supporting elements comprising grooved elements, said plurality being positioned in the front wall of said hamper and spaced from the ends of said wall whereby said wall is divided into a plurality of vertical panel portions, each of said wall closure elements being seated in one of said grooves and affixed to one of said grooved elements, said grooved elements comprising exterior portions overlying and hiding from view the edges of said wall closure elements seated in said grooves."

"Claim 2. In a hamper of the character described, in combination with bottom and top elements, a plurality of vertical, supporting, frame elements, at least two of said frame elements comprising grooved members, wall closure elements seated in the grooves of said grooved members and affixed thereto, one of said wall closure elements forming a panel for the front of said hamper, the other of said wall closure elements forming the rear and side walls and portions of the front wall of said hamper, portions of said grooved members extending outwardly beyond said wall closure elements and acting to frame said first mentioned wall closure element, the ungrooved vertical frame elements being positioned completely within said wall closure elements."

Neither of the defendants offered in evidence any prior art patents, publication or use as an anticipation of the structural patent. The prior art which was offered in evidence, was so offered to show the prior state of the art, the same art being relied upon by each defendant.

The following are the five patents offered in evidence, which I will discuss in order as well as the one prior publication which was also offered, and plaintiff's own prior hamper which was alleged as a prior use.

Patent 447,830 issued to David John Johnson for basket hamper, granted March 10th, 1891, discloses an ordinary basket hamper having an exposed upright at each corner with a hinged cover and with four wall closure elements, one closing each side of the hamper.

Patent 1,388,556 issued to Henry R. Garritson for basket granted August 23rd, 1921 discloses a wicker clothes basket in which the side walls 8, where they meet at the ends of the basket, are held in place by a plurality of strips, which are designated respectively, an inner strip 12, a reenforcing strip 11, additional strips 13, and exterior re-enforcing strip 14, and, a final exterior metallic strip 15.

Patent 1,799,621 issued to Harold F. Shaw, assignor to F. A. Whitney Carriage Company for clothes hamper granted April 7, 1931, discloses a wicker hamper having no legs, which rests on a hinged bottom element 17, which is held in position by a hook or latch 21, which may be manually released by pulling on the handle 31. Except for the base and latch mechanism briefly described, the structure of the clothes hamper shown is vague and indefinite. There is no showing as to how

the walls are made. Four vertical uprights 11, one at each corner, with wicker wall closure means 12 are indicated in Fig. 3, but there is no showing in the patent as to whether there are four wall closure elements, one for each wall or a single one which surrounds the main body of the hamper, or some other structural arrangement.

The patent does not disclose a paneled hamper or a hamper having grooved supporting elements or the equivalent thereof, nor any way of covering the exposed seam where adjacent wall closure elements meet.

Patent 2,051,006 issued to Lewis A. Marcus for receptacle granted August 11th, 1936, discloses a hamper having four wall closure elements 11 each positioned in a corner member 17, in a sort of dovetailed interlock. (Fig. 5). None of the patented features are disclosed in that structure.

German Patent 441,049 issued to Robert Hohener and Walter Holderegger for basket comprising a frame and wicker or woven walls, patented May 20th, 1925, discloses a wicker basket having vertical uprights at each corner, which are grooved, the grooves receiving the ends of the wicker wall closure elements (Fig. 5). The disclosure in that patent of a grooved element used in a hamper as a vertical upright to receive the edges of wall closure elements is substantially identical with the disclosure of pages 31 to 35 of Wireless and Gramophone Cabinet Making, also offered by defendants as Exhibit B.

All of the prior patents offered in evidence by the defendants were cited as references in the Patent Office and the patent in suit issued over them which adds to the weight of the presumption of validity of an issued patent. MacClemmy v. Gilbert Corset Co., 2 Cir., 211 F. 73; Imperial Bottle Cap & Machine Co. et. al. v. Crown Cork & Seal Co. of Baltimore City, 4 Cir., 139 F. 312.

Publication Wireless and Gramophone Cabinet Making, pages 31 to 35, inclusive, discloses a radio cabinet which has a rear panel that fits into grooves in vertical uprights so that it may be removed.

In Fig. 10 on page 33 the uprights are shown and in Fig. 9 page 32 the rear panel is shown partially removed. This publication appears to be substantially identical for the purposes for which it was submitted with the Hohener German Patent 441,049 in both of which the uprights are grooved and wall closure elements are fitted into the grooves and slidable therein, therefore, it seems to me that nothing is added to the art by this Exhibit over that cited by the Examiner.

This brings us finally to the hamper offered in evidence as Exhibit F, and the deposition with the accompanying Exhibits, which is introduced in evidence as Exhibit E. The deposition relates to a hamper which was previously made by the plaintiff and is illustrated in the September 1934 issue of House Furnishing Review at page 40. One of these hampers was offered in evidence as Exhibit F, and it is stipulated that it may be considered prior art to the Patents in suit. That hamper has a wicker panel element in the front, and the remainder of the hamper walls consist of a solid fiber board sheet which extends across the back, both side walls, and a portion of each side of the front of the hamper, which fiber board rests upon the base of the hamper, and supports the top of the hamper and the cover of the hamper. There are no vertical uprights in the hamper structure, except the two panel defining elements in the front wall. If the fiber board, forming the wall of Exhibit F, were removed, it appears from the testimony that the top frame of the hamper would collapse.

Hampers, like Exhibit F, were made by the plaintiffs for a period of eight months during 1933 and 1934 and were discontinued because they were no longer useful to the trade, for several reasons, among which were, that it did not supply enough ventilation to the clothes, that they had a musty odor when stored in it, that it had an appearance of a cardboard box, as which it became known in the trade, and that they could no longer sell the article.

From the evidence, it appears that hampers, such as Exhibit F, could not be sold in competition with the patented hamper, except at a cheaper price.

From the evidence it would appear that the defendant, New York Standard Manufacturing Co., Inc., is still making and selling a hamper in which fiber board elements support the top frame.

The price of such a hamper is from 10 to 25¢ lower than the alleged infringing

hampers, but even with the added cost to the public, the alleged infringing hampers are out-selling the fiber board hampers by 50%.

Plaintiff's sales increased after the bringing out of the patented hamper about 80%, that is, from approximately 150,000 hampers to about 250,000 hampers, and the increase in sales has continued since the introduction of the patented hamper.

The only prior reference not considered by the Patent Office, is plaintiff's own prior use, which was a commercial failure and was discontinued by the plaintiffs, and never adopted by anybody else. As soon as the patented hampers were marketed by plaintiffs, both of the defendants immediately copied plaintiff's patented article, and that became each of the defendants principle selling item. Where the old type hamper is continued in the line, it commands a substantially reduced price.

The old hamper differs structurally from the hamper of the patent in suit, in that the wall elements of the old hamper, are not only self supporting, but actually support the top of the hamper, whereas in the Patent in suit the wall elements are supported by the hamper frame and the top of the hamper is supported by a plurality of vertical uprights.

The claims in suit call for more than two vertical uprights and the 2nd claim calls for the wall closure elements to surround and enclose grooved vertical frame elements.

The claims in suit call for a hamper frame with the top supported on vertical supporting elements. None of these features is to be found in the prior use structure. No one of the patents pleaded, nor the prior use constituted, anticipation, nor can some composite structure from the prior art be built up which will constitute anticipation.

■ Neither of the defendants uses any of the prior art structures, but they have copied the structure of the patent in suit. In having done this, notwithstanding the fact that they were free to use the prior art, shows what they think of the patent in suit, and should be persuasive with us.

■ The claims in suit of the Structural Patent are not anticipated, and they show invention over the prior art.

The structural patent in suit is valid.

As to the Design Patent in suit, Design Patent 110,355 the defendants relied upon two Design Patents. Design Patent 92,709 issued to Edwin Esson, assignor by mesne assignments to Johnson Products Co. for design for a combined buffet and heat circulator or article of analogous nature, granted July 10th, 1934; Design Patent 96,322 issued to Charles M. Leary for design for a cabinet granted July 23rd, 1935, and upon four publications and the Gleitsman prior use hamper Exhibit F.

The two Design Patents and the catalogue of Sears, Roebuck & Co. No. 173 Page 666 were considered by the Patent Office during the prosecution of the application for the Design Patent in suit.

The Design Patent to Esson shows a cabinet which does not resemble the design of the patent in suit.

■ The test as to a Design Patent offered as a reference, is, the impression that it makes as a whole upon the eye and not a consideration of the elements of the design, and this design of Essons does not create the same impression as does the design of the patent in suit. There are no handles on or near the cover, the front of the cabinet is not paneled, but has across its entire upper portion, a series of large lenticules. The edges of the front are provided with grooved strips and the sides of the cabinet are provided with what looks like honeycomb openings. These are not found in the patent in suit.

The patent to Leary does not make the impression of the patented design. The front panel has the appearance of a great inverted U, in the center of the top there is an elevated cube-like element supported upon a narrow base and there is a U-shaped molding defining a lower portion of the front panel. None of these are found in the design of the patent in suit.

The Sears Roebuck hamper catalogue 173 Page 666 is substantially identical with plaintiffs' own prior hamper, Exhibit F. The hamper in each case being made with solid fiber walls, save for a paneled front element. The edges are sharp and not rounded, the handles do not curve into the sides, the molding which sets off the front panel, differs from the patent in suit, and the handles do not curve into the sides as they do in the patent in suit. The impression made by the Sears, Roebuck hamper and Exhibit F, is not that of the design of the patent in suit.

The hampers shown in the Montgomery Ward catalogue 119, and Sears, Roebuck catalogue 168 are not paneled hampers, but ordinary wicker hampers with different handles or without handles, and are without decorative features on the sides or body portions of the hamper, except such as may be found in the wicker design itself.

■ The Design Patent is not anticipated by any of the prior art offered as to it, and it shows invention over the prior art. It is, therefore, valid.

This brings us to the question of infringement, and I will consider first the Structural Patent and then the Design Patent, with reference to infringement.

The Structural Patent in suit No. 2,-130,661 contains two claims, the first, calls for a clothes hamper having a bottom element with a plurality of vertical supporting elements affixed to the bottom element and supporting a top element. It also calls for a plurality of wall closure elements, one of which forms the rear wall and the side walls of the hamper, and the other forms at least a portion of the front wall element of the hamper. In each of the alleged infringing structures all of these elements are found, and in each, two wall elements are provided, one of which is a wicker band which extends from one of the molding strips to the front of the hamper around one side and the back of the other side of the hamper and is connected to the second molding strip on the front of the hamper. In each of the infringing devices, that portion of the wall which lies between the two molding strips on the front of the hamper is closed by a second wall closure element. The claim calls for a plurality of vertical supporting elements to comprise grooved elements which are positioned in the front wall of the hamper and placed from the ends of the wall, so that the wall is divided into a plurality of vertical panel portions. The grooved elements are defined as comprising exterior portions overlying and hiding from view the edges of the wall closure elements which are specified as being seated in the grooves and affixed to the grooved elements, which are shown in Fig. 2 of the patent as at 20. They are stated in the specification to comprise a back portion 24 and a front ornamental portion 22 spaced from each other by the grooves 21. The wall closure elements are nailed to the back portion 24 by the staples or nails 23 and the edges of the wall clos-

ure elements are hidden from view by the ornamented portions 22.

In both of the defendant's alleged infringing hampers, the front wall of the hamper is divided into a plurality of vertical panel elements by two upright supporting elements inwardly positioned from the edges of the hamper. These vertical supporting elements differ slightly in each case from those of the patent in suit. In both of the alleged infringing structures, the ends of the wall closure elements are nailed to a vertical supporting element which is generally square in cross section. The wall closure elements being affixed to the outer face of this supporting element on the unsightly and exposed edges of the wall closure elements are then hidden from view by applying a strip of decorative molding which is tacked or nailed to the vertical supporting element. In the alleged infringing structures, as in the patent in suit, the front supporting elements comprise a back element to which the edges of the wall closure elements are nailed, and performs the same function in the same way, in that it supports the upper part of the frame of the hamper and receives and holds in position the ends of the wall closure elements.

In the alleged infringing structures as in the patent in suit, ornamental sections are provided which cover the face of the back supporting portion and which hide from view the edges of the wall closure elements, but they perform no function structurally, being provided solely as a decorative adjunct to the structure of the hamper, and are spaced from the back supporting element to provide space for the reception of the edges of the wall closure elements. The ornamental section 22 is integral with the back portion 24 in the patent in suit, but in the alleged infringing structures, the ornamental molding is not integral with the back portion, but is nailed to it.

What the defendants have done in each case is that they have taken the element 20 of the patent in suit and split it lengthwise through the grooves 21 and then nailed it together again, so that each portion of the element in the new assembly performs identically the function it performed in the patent in suit, and in the same way.

■ As I view the two alleged infringing structures, the defendants have taken the patented structure and made two elements of what is shown in the patent as

one, and these two elements function the same as did the one of the patent in suit.

Infringement cannot be avoided by making two elements out of one, and then securing the two elements together to perform exactly the same function.

It seems to me that the defendants have appropriated the plaintiff's invention by using the same or substantially identical means, functioning the same, for the accomplishment of similar purposes in similar ways.

It is true, as contended on behalf of defendants, that the invention is not a broad one, but that does not deprive the patentee of such a range of equivalents as may be necessary to protect his invention, and as has been hereinbefore pointed out, the only appreciable difference between the alleged infringing structures, and the patent in suit, does not relieve from infringement.

The second claim of the patent in suit differs in calling for a structure in which the vertical frame elements, which are not provided with ornamental covering sections are positioned completely within the wall closure elements. In the alleged infringing structures all of the vertical supporting elements, except the two which define the front panel, are positioned inside the wall closure elements and are hidden from view by those elements.

Both claims of the Structural Patent in suit have been infringed by each of the defendants.

As to the Design Patent in suit No. D 110,355 I will consider the alleged infringing structures of each of the defendants separately. That of the defendant Monarch Sanitary Products, Inc., is like the plaintiffs' in that each has a pearl top and rounded squat handles. The handles in each case being provided with a decorative strip of chromium inlay, and the main body of the hamper has rounded corners and is made of wicker. Also, the front panel of the hamper is finished in pearl and separated from the wicker body portion by a decorative strip of molding which comprises two grooved side elements spaced from each other by a wide flat central groove. The central groove in the defendant's hamper being provided with a chromium strip and plaintiff's hamper with molding strips, the ends of which are beveled. The handles of plaintiff's hamper are provided with a

finger grip. The hamper of the defendant is not so provided.

The legs in plaintiff's hamper are relatively short and rounded to conform to the edges of the hamper and extend from front to back as a single strip, whereas, the legs in defendant's hamper are longer, are rounded to conform to the ends of the hamper, and do not extend from front to back, except for this difference, the hampers are substantially identical in appearance, and viewed from the front this difference in the structure of the legs is not apparent.

The proper test to be here applied is whether the impression made on the mind of the ultimate purchaser of the design of the alleged infringing article is the same as that of the patent in suit and whether the average purchaser seeing one structure would mistake it for the other, and that, it appears to me would happen in the present case, because I can not believe that the showing of chromium strips on the handles of the alleged infringing structure, the difference in the legs and the provision of a chromium strip in the central groove of the alleged infringing structure would tend to prevent the average purchaser seeing one structure, from mistaking it for the other.

The Design Patent in suit is infringed by the said defendant.

As to the defendant, New York Standard Manufacturing Co., Inc., its product, which is alleged to infringe the Design Patent, is Exhibit 13. This defendant was, at the time it produced Exhibit 13, familiar with the plaintiff's product, Exhibit 10, which is an exact replica of the design shown in the patent in suit.

The patent in suit, and defendant's alleged infringing structure, have each a flat top which lies between two handles, which handles extend from front to back, are provided with finger grips similarly shaped and positioned, and their general contour is rounded as shown in the patent in suit. The handles of the alleged infringing structure are ridged whereas the handles of the patent in suit are smooth.

The body of the hamper in each case is similarly shaped, with rounded corners, provided with a front panel element set off from the remainder of the body by strips of moulding beveled at their ends which strips of moulding comprise grooved

edge elements separated from each other by a relatively wide, flat, central groove.

The defendant's hamper differs from that of the patent in suit, in appearance, only in the legs. The legs in both are short, but in defendant's hamper the legs are ridged, and do not extend from front to back, whereas they do in the hamper of the patent in suit.

It seems quite clear to me that the appearance, to the ultimate purchaser of the alleged infringing structure of the defendant, would be so similar to the design of the patent in suit, that the average purchaser seeing one structure would mistake it for the other.

The Design Patent is infringed.

In an effort to keep this opinion within reasonable limits I have not specifically referred to various arguments advanced by the defendants, but that does not mean nor indicate that I have failed to consider them. I not only do not agree with defendants that the prior art, especially Exhibit F with the Shaw patent, shows every element described in Claims 1 and 2 of the structural patent in suit, but on the contrary, I have found that the structural patent in suit shows invention over the prior art.

 The defense of File Wrapper Estoppel was not sustained. Arguments of counsel and the Examiner can not be considered and I can not find, as argued by the defendants, that because original Claim 5, which did not call for grooved elements, was cancelled, the claims in suit must be construed as limited to structural elements which are integral and grooved.

As originally filed, there were 5 claims.

Claims 1–3 and 4 called for grooved elements. Claim 2 called for elements adapted to receive and hide from view an end of each wall closure member. Claim 5 called for wall closure elements positioned to hide a predetermined number of vertical elements which were adapted to hide from view the ends of the wall closure elements.

The claims were all rejected on the first action. The first four claims were amended and all of them were rejected on the second action. Claims 1 and 4 were allowed on the third action, and the remaining claims were finally rejected, and thereafter erased for final action. Claim 3 although rejected always called for grooved elements. It can not be held that the allowance of the claims of the structure patent rests upon the fact that such claims called for grooved elements.

I have sufficiently discussed infringement.

As to the Design Patent in suit, I see no need of discussing the question of invalidity raised by the defendant, New York Standard Manufacturing Co., Inc., based upon the rejection by the Examiner on the first action, as that was reconsidered and the patent allowed by the Examiner.

Validity and infringement have been sufficiently discussed.

Both of the patents in suit are valid and infringed by the structures of both of the defendants.

A decree may be entered in favor of the plaintiffs in each of the above entitled suits against the defendant therein, with costs and injunction, and the usual order of reference.

Settle decrees on notice.

Submit proposed findings of fact and conclusions of law in accordance with this opinion, for the assistance of the Court, as provided by the Rules of Civil Procedure and the Rules of this Court.