**R–WAY FURNITURE COMPANY, Inc.**

v.

**DUO–BED CORPORATION.**

No. 60 C 1952.

United States District Court
N. D. Illinois.

July 2, 1962.

George T. Mobille, Cushman, Darby & Cushman, Washington, D. C., Byron, Hume, Groen & Clement, Chicago, Ill., for plaintiff.

James R. McKnight, Chicago, Ill., Robert C. Comstock, Los Angeles, Cal., for defendant.

JULIUS J. HOFFMAN, District Judge.

This is an action in which the plaintiff seeks a declaratory judgment of invalidity of United States Patent No. DES. 184,809 on a Combination Sofa Bed and Desk Unit issued April 7, 1959 to the defendant as assignee of the inventor Louis Elliott Frey, and of non-infringement of the single claim thereof. The defendant has filed a counterclaim for patent infringement of this patent and unfair competition, as well as a cross claim for infringement of United States Patent No. 2,630,581 issued to Truman S. Ziegenfuss and assigned to the defendant. The plaintiff filed a counterclaim for declaratory judgment that Patent No. 2,630,581 was invalid and not infringed. By stipulation of the parties before trial, the defendant's cross claim for infringement of Patent No. 2,630,581 was limited to claims 9 and 17. During the trial and with the plaintiff's consent, the defendant moved to dismiss its counterclaim for unfair competition. The motion was granted.

Plaintiff is a Wisconsin corporation, having its principal place of business in Sheboygan, Wisconsin, that manufactures and sells furniture. Sales are carried out by contract or through show rooms located in various cities throughout the United States. (Tr. 9). The defendant is a corporation of the State of Delaware, having its principal place of business in Los Angeles, California, specializing in hotel and motel equipment. Sales are carried out by contract and through show rooms located in various cities of the United States. (Tr. 252). Louis Elliott Frey is its President. (Tr. 313). Thus, this court has jurisdiction of the subject matter and the parties involved in suit.

Defendant is the owner by assigment of Patent No. DES. 184,809 and Patent No. 2,630,581. Defendant's allegation of infringement of claims 9 and 17 of Patent No. 2,630,581 and of the single claim of Patent No. DES. 184,809 is directed to a furniture grouping designated by plaintiff as the Versi-Bed unit and comprising a movable sofa bed, a movable conventional bed, and a desk having an angled front and positioned between the two beds. The Versi-Bed unit can be classified as day-night furniture or convertible bed furniture, widely used in hotels and motels.

### The Design Patent

The defendant has manufactured several models of day-night furniture based on its design patent No. 184,809. The most successful model is known as the Duo-Executive.

The Versi-Bed unit was designed following inquiries from Hilton Hotels and Holiday Inns expressing an interest in day-night furniture of the type generally corresponding to the defendant's Duo-Executive unit, (Tr. 23, 25). The plaintiff's sales representative in Miami, Florida, Jack Heller, sent to the plaintiff a brochure illustrating the defendant's Duo-Executive unit. The brochure had various patent numbers listed on its back page. As a result, the plaintiff proceeded to consult its patent attorneys in order to determine whether the Duo-Executive design was protected by any United States Patent. (Tr. 25, 26). The plaintiff's patent attorneys advised the plaintiff of certain of the defendant's patents, including Patent No. DES. 184,809, which could be interpreted as covering the structure of the defendant's Duo-Executive.

The plaintiff also received from Jack Heller a sketch prepared by Horst Gunther for Heller, and directed to a day-night furniture grouping comprising a sofa bed, a desk and a conventional bed. This sketch was sent by the plaintiff to its patent attorneys, who evaluated it from the standpoint of patent infringement and advised that the furniture grouping therein would infringe certain of the defendant's patents, including Patent No. DES. 184,809.

The plaintiff thereupon designed its Versi-Bed unit in consultation with its patent attorneys, who advised that, after certain minor changes were made, the Versi-Bed unit would not infringe any valid United States Patent, including any owned by the defendant. The design of the Versi-Bed unit commenced in March of 1960, and was completed in August of the same year. (Tr. 79).

Following the completion of the Versi-Bed design, the plaintiff received a letter dated August 5, 1960, from the defendant's attorney accusing the plaintiff of patent infringement. The plaintiff answered this letter through its attorneys and informed the defendant that it had no intention of infringing any of the defendant's patents. On December 6, 1960, the defendant's attorney wrote the plaintiff's attorneys, specifically threatening suit for infringement of United States Patent No. DES 184,809, and for unfair competition, if the plaintiff sold its Versi-Bed unit, which had been seen by the defendant on display at the New York Hotel Equipment Show of 1960. The plaintiff's attorneys merely acknowledged this letter, and on December 28, 1960, the plaintiff brought this cause of action.

The Patent No. DES. 184,809 claims the ornamental design for a combined sofa bed and desk unit as shown in the patent drawings. Although the single claim of the patent is limited to the sofa bed and desk unit, there also appears in the patent drawings a conventional bed placed adjacent to the desk unit on the side opposite the sofa bed. The essential features contributing to the ornamental design are two-fold, that is to say, the arrangement of the sofa bed and conventional bed relative to the desk unit, and the angled front of the desk unit itself. The plaintiff attempted to build its Versi-Bed unit in such a fashion so as to be similar to the defendant's Duo-Executive model without actually infringing on the defendant's design patent.

■ A design patent is infringed by any design which, to general observers interested in the subject, or to purchasers of things of similar design, has the same appearance as that of the design covered by the patent. Gorham Mfg. Co. v. White, 14 Wall. 511, 81 U.S. 511, 528, 20 L.Ed. 731 (1872). The plaintiff's Versi-Bed unit was copied from the defendant's Duo-Executive unit and the difference in design between the plaintiff's Versi-Bed and the defendant's design patent No. 184,809 are only minor and do not change the overall design effect or impression. The overall impression on the eye and the mind created by the plaintiff's Versi-Bed is the same as that created by the defendant's patent design No. 184,809.

■ If Design Patent No. DES. 184,809 were valid, it would be infringed by the plaintiff's Versi-Bed unit. However, there can be no infringement of a design that is not patentable.

The plaintiff contends that the design patent is invalid because (1) it does not meet the conditions for patentability of 35 U.S.C. § 103 over prior art; (2) the alleged invention purported to be claimed thereby is insufficiently and inaccurately disclosed; and, (3) that it is a mere aggregation of elements and parts which do not cooperate in any new or unexpected manner to produce a new, original and ornamental design.

*Prior Art*

The plaintiff has submitted eighteen patents and twenty-four publications in anticipation of the defendant's design patent. It has been held that excessive number of such references is in itself persuasive of the futility of prior attempts to solve the problem. The prior art upon which the plaintiff now lavishes its praise was apparently permitted to be dormant until the exigency, created

by this suit, required its resurrection. Ric-Wil Co. v. E. B. Kaiser Co., 179 F.2d 401 (7th Cir. 1950).

Day-night or convertible bed furniture permitting the use of one room as a parlor during the day and as a bedroom at night had been used for many years prior to the invention of Patent No. DES. 184,809. In particular, day-night furniture groupings comprising a movable sofa bed and a conventional bed arranged at right angles to each other, with a table or desk therebetween, were well known in the trade before the invention of Patent No. DES. 184,809, as exemplified by the following patent and printed publications:

a. Frey United States Patent No. DES. 182,996 (Px 12, item 9).

b. Reprint of "Hotel Management," June, 1945, Page 34 (Px 12, item 23).

c. Reprint of "Hotel Management," September, 1948, Page 52 (Px 12, item 27).

d. Reprint of "Upholstering," October, 1948, Page 75 (Px 12, item 28).

e. Reprint of "American Motel Magazine," May, 1950, Page 15 (Px 12, item 31).

f. Reprint of "The Hotel Monthly," December, 1951, Page 45 (Px 12, item 33).

g. Reprint of "Pacific Coast Record," September, 1955, Page 6 (Px 12, item 36).

h. Reprint of "Hotel Management," July, 1953, Page 83 (Px 12, item 35).

i. "Interior Design," September, 1955, Page 82 (Px 12, item 37).

j. Reprint of "Hotel Management," October, 1955, Page 84 (Px 12, item 38).

k. Reprint of "American Motel Magazine," December, 1955, Page 62 (Px 12, item 40).

l. "Interior Design," April, 1956, Page 104, (Px 12, item 41).

m. "Interior Design," February, 1957, Page 90, (Px 12, item 42).

Prior to the date of the invention in Patent No. DES. 184,809, December, 1957, the use of a sofa bed and a furniture unit adjacent thereto having a side which forms the head board of the sofa bed in its sleep position, was well known in the trade, as exemplified by the following patent and printed publications:

a. Frey United States Patent No. DES. 181,844 (Px 12, item 7).

b. Reprint of "Hotel Management," June, 1945, Page 34 (Px 12, item 23).

c. "Interior Design," April, 1956, Page 104 (Px 12, item 41).

Prior to the date of invention in Patent No. DES. 184,809, use of a hinged bolster in combination with a pivoting sofa bed was well known in the trade, as exemplified by the following patents and printed publications:

a. Frey United States Patent No. DES. 178,233 (Px 12, item 6).

b. Frey United States Patent No. DES. 181,844 (Px 12, item 7).

c. Frey United States Patent No. DES. 182,996 (Px 12, item 9).

d. Frey United States Patent No. 2,602,937 (Px 12, item 13).

e. Reprint of "Pacific Coast Record," August, 1948, Page 5 (Px 12, item 26).

f. "Interiors," August, 1949, Page 128 (Px 12, item 29).

g. Reprint of "College and University Business," April, 1951, Page 33 (Px 33).

The United States Patent Office did not cite any of the aforementioned patents or publications as prior art in the file of Patent No. DES. 184,809.

The comments of the examiner who rejected the application for the patent in its original form are pertinent. These appear on page four of the file wrapper, in part, as follows:

"The configuration of the desk cannot be adequately determined from the present drawing disclosure. Accordingly a top plan view of the desk portion is required to aid the examiner in matters of possible further search.

* * * * * *

"As to patentable merit, the unit claimed does not differ over applicant's prior patent D–182,995 in any way except for the interconnecting desk unit. The publication references show interconnecting units of this type to be old in the furniture art.

"Hence, to substitute for the desk unit of said D–182,992 (sic) a unit of the type disclosed by the June 1955 Furniture Retailer item would not constitute a patentable advance in the art and would result in a substantial anticipation of the claimed appearance."

Upon reapplication the patent was granted. It would appear that the configuration of the desk was the controlling factor in the granting of the patent.

██ In assailing the validity of a patent regularly issued by the Patent Office, the plaintiff has a heavy burden of proof. There is, of course, the presumption of validity which attached to the grant. This presumption is not an idle gesture but is a positive factor which must be overcome by one who asserts invalidity. The presumption is strengthened in a case where the prior art relied upon to invalidate the patent was considered and rejected by the patent office. Anderson Co. v. Sears, Roebuck & Co., 265 F.2d 755 (7th Cir. 1959).

█ The presumption of validity of a patent does not apply as to prior art not considered by the patent office. Day-Brite Lighting, Inc. v. Sandee Mfg. Co., 286 F.2d 596 (7th Cir. 1960). It has been held that it is as reasonable to conclude that prior art not cited was considered and cast aside because not pertinent, as to conclude that it was inadvertently overlooked. Artmoore Co. v. Dayless Mfg. Co., 208 F.2d 1 (7th Cir. 1953).

█ Designs must be tested by their over-all esthetic effect in determining patentability. Capex Co. v. Swartz, 166 F.2d 5 (7th Cir. 1948). "The essence of a design resides, not in the elements individually, nor in their method arrangement, but in the tout ensemble —in that indefinable whole that awakens some sensation in the observer's mind." Pelouze Scale & Mfg. Co. v. American Cutlery Co., 102 F. 916, 918 (7th Cir. 1900). Therefore, it is not proper to show piecemeal anticipation to a design patent.

The plaintiff has not shown any prior design that has the same over-all esthetic effect as that of the defendant. This, however, does not mean that the defendant's patent is valid. A design is not patentable merely because it can be distinguished in appearance from prior designs. Its creation must involve the exercise of inventive faculty. S. Dresner & Son v. Doppelt, 120 F.2d 50 (7th Cir. 1941).

*Patentability*

█ Every design patent must, of necessity, embody something old and known. Design being only a rearrangement of line and form, it must always depend upon elements that in a strict sense are old. The question is whether the end result is a design for an article of manufacture (1) achieved as a result of inventive skill as contrasted with the natural aptitude of a skilled artisan; (2) is new, (3) original; and, (4) ornamental. Sel-O-Rak Corp. v. Henry Hanger & Display Fixture Corp., 232 F.2d 176, 178 (5th Cir. 1956).

From an examination of the prior art submitted by the plaintiff it is clear that the defendant's design is new and is ornamental. This, however, is not enough to create patentability. To fulfill the requirement for the exercise of the inventive faculty in design patents, creative originality in artistry must be found. Amerock Corp. v. Aubrey Hardware Mfg., Inc., 275 F.2d 346 (7th Cir. 1960).

As suggested above, the originality of the design is attributable to the configuration of the desk that is between the two bed units. The desk is five-sided with the front essentially constituting two sides of a triangle. It is clear that the shape of the front of the desk was

dictated by practical considerations. The shorter angled side is so angled in order to function as the head board of the pivoting bed when the latter is in the sleep position. The longer side is angled in order to provide full access to the conventional bed. The position of the desk itself is also dictated by functional requirements, that is to say, the desire to have the telephone convenient to both beds and to the desk.

The following actions on the part of the defendant emphasize that the design was dictated by functional requirements:

(1). During the prosecution of the application of Patent No. DES. 184,809, Frey stated that the design stemmed from "utilitarian aspects." According to Frey, utilitarian aspects included, "First, the desk can be utilized as a desk by placing a chair in front of the long side" (Px 13, page 8); "Second, full access is provided to both beds so that they can be occupied and so that the beds can be made." (Px 13, page 8). "With applicant's design, it is possible to have the telephone convenient to both beds and also to the desk." (Px 13, page 8). "There is no teaching of placing the desk along one wall and shaping it so that access can be obtained both to the desk and to the beds." (Px 13, page 8).

(2). Frey testified that an essential difference between the desk used in his design and the tables of the prior art is that a desk "has a function" (Tr. 320); and that this function enabled having a telephone located between the two beds, yet permitting, at the same time, the taking of notes and the like during a telephone conversation. (Tr. 336–337).

(3). The defendant's own advertisements emphasized the functional aspects of the design, as for example, in the Duo-Executive brochure (Px 5), statements are made such as:

"You get one generous desk—the design of which makes it possible to have the telephone between the beds and on the desk at the same time."

"The placement of this generous desk solves an old problem, i. e., should the telephone go between the beds or on the desk? Now, no need to sit on the bed while phoning—no need to write on a bed or small night stand while phoning."

Again in Dx 51, it is stated:

"Duo-Bed has also solved magnificently that perennial problem of where to place the telephone in a hotel room. Here, that useful instrument stands on the triangular desk which separates the two beds —within each reach from either, yet not too near for annoyance."

(4). Frey also testified concerning another furniture arrangement which he designed. The *modus operandi* that was used and which could apply with equal force to the design of Patent No. DES. 184,809, was succinctly stated by Frey as follows:

"After working out the function, we made it pretty and Jim Buckley did the decorative design." (Tr. 504).

A design dictated by mechanical or functional requirements is not patentable. However, it is well established that the mere fact that a design sought to be patented may involve some mechanical or utilitarian function does not render it unpatentable, but the invention must relate to the design, and be distinguishable from the mechanical function involved. Hopkins v. Waco Products, 205 F.2d 221 (7th Cir. 1953). In this case the configuration cannot be distinguished from the mechanical function involved.

The design in question does not exhibit that degree of inventive genius required to be patented. The exercise of the skill of only an ordinary designer is not sufficient. Placing a desk between two beds positioned as they are in the design has long been known to the art. The use of an angled desk has also been long known to the art. The designer of Patent No. DES. 184,809 had himself obtained prior design patents on a twin sofa bed and an angled table unit. To

substitute an angled desk, whose configuration is dictated functionally, for the angled table is not inventive genius.

The Duo-Executive unit, which is based on Patent No. DES. 184,809, had enjoyed commercial success. However, there is nothing to indicate what portion of the asserted success was due to the mechanical or utility features of the device and what, if any, was attributable to the design. Lenora Greene, the Executive Vice-President of the defendant corporation, testified that more than 50% of the defendant's advertising budget was directed to the Duo-Executive unit, (Tr. 258,261), and that the Duo-Executive unit was featured at hotel equipment shows where the defendant's products were displayed. (Tr. 260).

The court recognizes the importance of wide public reception of an article as a factor in determining whether a particular design is entitled to coverage by a design patent, but for such evidence to be impressive it should be shown that the public acceptance of the article was due to the novel design for which the patent was issued. In a close case evidence of commercial success may tip the scales in determining whether an improvement amounts to an invention. But while commercial success indicating public appeal may be used to resolve a doubt in favor of a patentee, it cannot be used to create a doubt where there is a lack of invention. Hueter v. Compco Corp., 179 F.2d 416, 417, 418 (7th Cir. 1950). Where invention is plainly lacking, commercial success cannot fill the void. Jungersen v. Ostby & Barton Co., 335 U.S. 560, 567, 69 S.Ct. 269, 93 L.Ed. 235 (1948). See also, H. W. Gossard Co. v. J. C. Penney Co., 304 F.2d 515 (7th Cir., 1962).

The application for Patent No. DES. 184,809 was originally filed with Figure 1 and 2 alone. Figure 3, a top plan view, was added during the prosecution of the application at the request of the Patent Office Examiner, who did not hold that such addition constituted new matter. The figure was added to aid in the determination of the configuration of the desk.

An applicant for reissue may fully describe his original invention and include in his new description and claims not only what was described before, but also what was suggested or implied in the original drawings, specifications and models. Weller Mfg. Co. v. Wen Products, Inc., 231 F.2d 795 (7th Cir. 1956). In the instant case Figure 3 did not disclose anything new which would result in the invalidation of the design patent for insufficient and inaccurate disclosure.

Mechanical Patent No. 2,630,581

The plaintiff attacks the validity of claims 9 and 17 of Patent No. 2,630,581 on two principal grounds, which are as follows:

1. These claims have been anticipated by prior art and have been described in printed publications one year prior to the invention thereof.

2. The claims do not represent patentable invention in that they were obvious to persons having ordinary skill in the art to which they appertain and that they represent a mere aggregation of elements and parts which do not cooperate in any new or unexpected way, or produce any new or unexpected results, or any old results in any new or different manner.

The defendant proved no earlier date of invention for Patent No. 2,630,581 than the filing date of the application therefor, filed December 10, 1949. The prior patents and printed publications relied upon by the plaintiff to invalidate the defendant's patent comprise ten prior patents and three printed publications. Two of the major patents relied on, Bartlett et al., No. 1,435,371 and Gerber (German) No. 70,301, were considered and rejected by the Patent Office as to the final form of claims 9 and 17.

Claims 9 and 17 of Patent No. 2,630,-581 essentially cover an elongated table having a lateral extension on one end thereof and forming a horizontal L-shaped table height surface, a movable bed positioned within the L and extend-

ing the length of the elongated table, a pivot point connecting the L-shaped table and the bed at the head of the bed, and elongated rollers secured to the underside of the bed having the rotary axes thereof aligned with a radius drawn through the pivot point.

The essential features of the convertible bed unit claimed in claims 9 and 17 of Patent No. 2,630,581 constitute an aggregation of old elements well known in the trade, as exemplified by the following patents and printed publications:

(a) Multiple rollers corresponding to those in Patent No. 2,630,581 are shown in United States Patent No. 270,605 (Px 18, item 1); United States Patent No. 389,341 (Px 18, item 3); United States Patent No. 998,511 (Px 18, item 4); and, United States Patent No. 1,102,508 (Px 18, item 5).

(b) An L-shaped table in conjunction with a movable bed positioned within the L and extending the length of the table is shown in the reprint of "House Beautiful," January, 1940, Page 39 (Px 18, item 11).

The United States Patent Office did not cite any of these patents or publications as prior art in the file of Patent No. 2,630,581. However, the Patent Office did consider the Bartlett et al. and Gerber patents which also deal with multiple rollers. It is difficult to conclude that the Patent Office was not aware of prior movable beds that were built in conjunction with L-shaped tables. "The presumption of validity of a patent is greatly strengthened when the principal art relied upon has been considered and rejected by the Patent Office." Lewyt Corp. v. Health-Mor, Inc., 181 F.2d 855, 857 (7th Cir. 1950).

 A new combination, if it produces new and useful results, is patentable though all the constituents of the combination were well known and in common use before the combination was made. Magowan v. New York Belting & Packing Co., 141 U.S. 332, 12 S.Ct. 71, 35 L.Ed. 781 (1891). On the other hand, a combination of old elements which performs no new function and accomplishes no new results does not involve patentable novelty. American Road-Mach. Co. v. Pennock & Sharp Co., 164 U.S. 26, 17 S.Ct. 1, 41 L.Ed. 337 (1896).

The prior art cited by the plaintiff does not teach a pivotally mounted sofa bed and bolster and table structure in combination with supporting means. There is no showing of supporting means consisting of rollers mounted with their axes directed toward the pivotal axis of the bed so that the roller sections are free to rotate independently of each other to avoid slippage and resulting friction and carpet wear. In all of the multiple roller or caster patents cited by the plaintiff the casters or roller sections all move together. There is no teaching of orienting them toward a pivotal axis so that they will rotate at different rates of speed, nor is there any teaching of using such a structure in combination with a pivotally mounted sofa bed.

The fact that multiple casters or rollers were known does not negative invention *per se*, because it is the manner of their use which is novel and which is not anticipated by the prior art. The combination of elements set forth in claims 9 and 17 of Patent No. 2,630,581 is new and the result achieved is new and useful. If this novel use of multiple rollers were in fact "obvious," as contended by plaintiff, it should explain why no one ever conceived of it during the almost eighty years which have passed since the issuance of the patents relied upon by the plaintiff, the oldest of which were issued in 1883, 1885 and 1888.

 The plaintiff has not met the heavy burden of proof needed to overcome the presumption of validity of claims 9 and 17 of Patent No. 2,630,581. Therefore, claims 9 and 17 of Patent No. 2,630,581 are found to be patentable and valid within the meaning of 35 U.S.C. Sections 101, 102 and 103.

The structure, location and orientation of the rollers of plaintiff's Versi-Bed are shown in plaintiff's own drawings, which

were received in evidence as defendant's Exhibits 13, 14, 26, 27, 28 and 30 and in the model, plaintiff's Exhibit 4. It is clear from the plaintiff's own drawings and the testimony of its own witnesses that the plaintiff's Versi-Bed incorporates the roller structure of the defendant's patent, in which a plurality of rollers are mounted on a single axis which is oriented toward the pivot point so that the individual rollers rotate at different rates of speed when the bed is pivoted.

■ The plaintiff's Versi-Bed does not infringe claims 9 and 17 of Patent No. 2,630,581, because it does not include a horizontal L-shaped table as a part of its structure. This was admitted by the defendant's President, Frey, during his deposition taken in Chicago, Illinois on November 28, 1961 (Tr. 345). Frey also testified at great length about the differing functions of a table and a desk. Claims 9 and 17 speak of a table height surface and a table, while the Versi-Bed unit contains a desk and not a table. Therefore, there is not substantial identity between the alleged infringing device and the invention in claims 9 and 17 of Patent No. 2,630,581. To establish infringement mere application of claim phraseology or a word by word correspondence is not enough, nor is similarity of result, but there must be real identity of means, operation and result. Flowers v. Austin-Western Co., 149 F.2d 955 (7th Cir. 1945). This identity is lacking in the case at bar.

The court finds that the single claim of United States Patent No. DES. 184,-809 is invalid; and, that claims 9 and 17 of Patent No. 2,630,581 are valid. The defendant's counterclaim and cross claim insofar as they charge patent infringement are dismissed. Each party shall pay its own attorney fees and statutory costs and disbursements shall be taxed evenly and included and made a part of this judgment. The foregoing memorandum shall stand as the findings of fact and conclusions of law required under Rule 52(a) of the Federal Rules of Civil Procedure, 28 U.S.C.