**D. KLEIN & SON, INC., Plaintiff,**

v.

**GIANT UMBRELLA COMPANY, Inc.,
Defendant.**

**No. 71–C–4587.**

United States District Court,
S. D. New York.

March 28, 1972.

William R. Liberman, New York City, for plaintiff.

Brumbaugh, Graves, Donohue & Raymond, New York City, for defendant; by Francis J. Hone, Robert Neuner, New York City, of counsel.

CROAKE, District Judge.

## MEMORANDUM

The keystone of this action is plaintiff's assertion of invalidity of design patent No. D.221,713, for an umbrella design issued to Phillip Kates, assignor to defendant, on August 31, 1971. Plaintiff seeks a declaratory judgment that the patent is invalid. Defendant has counterclaimed for patent infringement. Jurisdiction is based on federal patent laws. Title 35, U.S.C.

By this motion plaintiff seeks summary judgment in its favor, pursuant to Fed.R.Civ.P. Rule 56(b), asserting that the patent in question is invalid, either as fully anticipated by prior publications, 35 U.S.C. § 102, or as unobvious because of such prior publications, 35 U.S.C. § 103.

The following is a history of the patent prosecution as it appears from submitted copies of Patent Office file records. On September 21, 1970 defendant's assignor filed an application for a design patent. Subsequently, the title and description were amended pursuant to the Patent Examiner's proposals. The claim contained in this application was rejected under 35 U.S.C. § 103, in view of three old United States patents, presently cited at the foot of the patent in suit: the prior patent designed by Crown was cited for its overall appearance; the prior patent designed by Sabotka was cited for transparency per se; and the prior patent designed by Johnson was cited for the cover shape. The applicant contested the rejection based on the references. By supplementary amendment, following an interview between the patent examiners, the inventor and the inventor's attorney, the claim of record was canceled and replaced by another descriptive claim.

Thereupon, the application was physically retrieved by the patent examiner, although it was ready for printing and issue on June 22, 1971 as Patent No. D.220,990. In a document dated May 21, 1971, the Examiner requested withdrawal of the patent to enter a new rejec-

tion under 35 U.S.C. § 102(b) for prior publication, in view of new references examined—"the French magazine *Industries de l'Habillement,* May 1967 and another 1967 French magazine as yet unidentified p. 89," and a further rejection under 35 U.S.C. § 103 as obvious in view of the new references and references already of record. Notice of the re-rejection was mailed on June 29, 1971. Applicant's attorney conferred with the patent examiner on July 6, 1971. On July 7, 1971 the applicant requested that the claim or characteristic feature clause, of the application be re-amended to read, as it presently appears: "The characteristic feature of my design resides in the combination on the open umbrella disclosed, of the deep dome of the cover and the highly disposed stretchers, whereby to impart to the umbrella a double curvature from its top closed end to its bottom open end, the extremities of the lower curved portion being significantly divergent with respect to the central axis of the umbrella." In addition to the re-amendment of the clause, the applicant asserted that the Patent Office had improperly attempted to divest him of a vested interest as of June 22, 1971, the originally announced issue date. A petition under Rule 181 of the Patent Office was asserted, in a letter by defendant, to be under consideration to request issue of the patent *nunc pro tunc* as of June 22, 1971.

On August 31, 1971 the design patent in question, No. D.221,713, was issued containing reference citations to the previously noted three old United States patents and the French magazine *Industries de l'Habillement,* May 1967, p. 20.

Regarding the history of the patent prosecution, movant contends: (a) that withdrawal of patent No. D.220,990 after it was scheduled to issue and after the final fee had been paid was an *ultra vires* act in violation of Rule 313 of the Patent Office Rules of Practice; that had the French magazine been cited by the Examiner prior to the first allowance and first final fee, the patent would not have been allowed pursuant to 35 U.S.C. §§ 102, 103; and (c) that the application was only granted the second time because the patent examiner, who allegedly exceeded his authority by withdrawal of the patent without Commissioner approval, was threatened by defendant's attorney with a petition under Rule 181 to invoke the supervisory authority of the Commissioner of Patents.

The movant, while lacking sufficient evidence, has attempted to demonstrate the alleged improper prosecution of this patent by threading together submitted Patent Office records with his own conjecture and theories. The movant does not claim that he was present at the discussions referred to in the documents, submitted for the truth of their statements.

 Notwithstanding the hearsay problems which inure to the purported evidence of plaintiff, it has not been demonstrated that the Examiner acted improperly by withdrawing the application for Patent D.220,990, in light of Patent Office Rules of Practice 313(b) (Rules) and § 1308.01 of the Manual of Patent Examining Procedure (Manual), entitled "Rejection After Allowance." Furthermore, from the evidence submitted it does not appear that the time at which the French magazine was referred to by the Examiner precluded its effective consideration.

The argument of plaintiff dealing with an alleged threat to the Examiner cannot be determined upon the papers presently before the Court. The defendant contends that the Examiner had authority to withdraw the patent from issue, and further that having properly acted the Examiner could not be threatened under Rule 181. He further contends, and at this juncture we see no reason to disagree, that defendant's prior consideration of a petition under Rule 181 concerned itself with the clerical failure to provide written notice of

withdrawal to the applicant, prior to the projected date of issue; with the result that the ultimate patentee was not notified until June 29, 1971, one week after the first projected date of issue, and thus denying to applicant an opportunity to respond by way of argument of amendment under Rule 312 to overcome the reference and avoid the necessity for withdrawal from issue. *See* § 1308.01 of the Manual.

The evidence presented by the parties thus far is equally incomplete to enable a determination on whether the design in question properly meets the qualifications for a design patent. The controlling statute, 35 U.S.C. § 171, provides:

> Whoever invents any new, original and ornamental design for an article of manufacture may obtain a patent therefor, subject to the conditions and requirements of this title.

> The provisions of this title relating to patents for inventions shall apply to patent for designs, except as otherwise provided. Id.

■■ A design patent is concerned with the *toute ensemble,* the overall aesthetic effect of the design. Gorham Mfg. Co. v. White, 14 Wall 511, 81 U.S. 511, 20 L.Ed. 731 (1872); R-Way Furniture Co. v. Duo-Bed Corp., 216 F.Supp. 862 (N.D.Ill.1962); Gleitsman v. Monarch Sanitary Products, 26 F.Supp. 152 (S.D.N.Y.1939). Thus, a design may capture an aspect of a number of former suggestions and still qualify for patent if it produces *toute ensemble* a new and pleasing impression on the esthetic sense, Forestek v. Knapp-Monarch, 106 F.2d 554 (6th Cir. 1939), E. H. Sheldon & Co. v. Miller Office Supply Co., 188 F.Supp. 67 (S.D. Ohio 1960), and if it is unobvious, when made, to a person having ordinary skill in the field of the questioned art, 35 U.S.C. § 103; Graham v. John Deere Co., 383 U.S. 1, 17, 86 S.Ct. 684, 15 L.Ed.2d 545 (1966); Payne Metal Enterprises, Ltd. v. McPhee, 382 F.2d 541 (9th Cir. 1967), citing Vache-

ron & Constantin—LeCoultre Watches, Inc. v. Benrus Watch Co., 260 F.2d 637, 641 (2d Cir. 1958). The mechanical function or functional value of the subject matter is not a factor in determining design patent validity. Royal Metal Co. v. Art Metal Works, 121 F. 127 (S.D. N.Y.1903), aff'd 130 F. 778 (2d Cir. 1904). *See* 2 Deller's Walker on Patents, § 170 at 789–98 (2d Ed. 1964). *But cf.* Report of the President's Commission on the Patent System, p. 12 (1966).

The Court has studied patents and publications of umbrellas and parasols submitted by the parties. It may be that each of the designs submitted possesses a characteristic that can be recognized in the patent in suit, but it would appear that considering the article *toute ensemble,* only the umbrella displayed in the magazine, *Industries de l'Habillement,* May 1967, and the German magazine, *Schirm und Stock,* September 1967, come close to encompassing the characteristic of the patent design in suit.

The German magazine article written alongside of the displayed umbrella discusses the umbrella as being designed by Emmanuella Khanh. According to defendant, the same designer created the umbrella in the French publication. It remains for a trier of fact to determine whether both magazines display the identical umbrella design, so as to further decide whether the German magazine displays a design not examined by the Patent Office prior to their granting a patent.

The umbrella design as shown in the French article and over which the Patent Office granted a patent does not by itself demonstrate the ornamental design which marked the patent in suit: that is, the deep dome design of a compound curving transparent cover effecting the appearance of protection down to, and including the shoulders of the user of the umbrella.

The claim that the "bubble" umbrella design is obvious is not borne out by the counterclaim of defendants as to the record setting sales that it is allegedly responsible for. The Court cannot on the papers now before it dispense with the value of commercial success as a factor to be taken into consideration. Jacob Elishewitz & Sons, Co. v. Bronston Bros. & Co., 40 F.2d 434, 436 (2d Cir. 1930); *see* Stuart W. Johnson & Co. v. Ro-Ber, Inc., 156 U.S.P.Q. 177, 182 (M.D.Ill.1967). Boyer, Commercial Success as Evidence of Patentability, 37 Fordham L.Rev. 573 (1969).

■ ██ We are in accord with the concept that *in* design patent cases summary judgment should be utilized *where possible* to avoid "an absurd waste of time and effort," G. B. Lewis Co. v. Gould Products, Inc., 436 F.2d 1176 (2d Cir. 1971). However, this court presently finds itself confronted with a matter which bristles with controlling issues of fact, such as what transpired at the Patent Office to bring this application to its maturity, whether particular alleged prior publications were in fact examined by the Patent Office before granting the patent, and as to the nonobvious qualification, how has this design been received in its respective trading market.

██ At this time there can be no fixed certainty as to the validity of the patent in suit. The Court "requires that reasonable doubt on the question of validity be resolved in favor of the patent holder." Ken Wire & Metal Products, Inc. v. Columbia Broadcasting Systems, Inc., 338 F.Supp. 624 at 629 (1971) (S.D.N.Y.), quoting Lemelson v. Topper Corp., 450 F.2d 845 (2d Cir. 1971).

Finally, the Court finds the charge of harassment made by plaintiff and the assertion by defendant that this motion totally lacks merit to be baseless and not requiring discussion.

Accordingly, motion for summary judgment is denied.

So ordered.